(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____  :
                                     :
MICHAEL JOHNSON,                     :
                                     :
            Plaintiff,               :       Civil No. 05-4329 (RBK)
                                     :
     v.                              :       **OPINION**
                                     :
CITY OF ATLANTIC CITY, et al.        :
                                     :
            Defendants.              :
_____  :

**KUGLER**, United States District Judge:

     Presently before the Court is a motion by defendants City of Atlantic City and Craig Callaway ("Defendants") for summary judgment against plaintiff Michael Johnson ("Plaintiff") on his suit for claims brought pursuant to 42 U.S.C. § 1983 for violations of his rights guaranteed by the First Amendment of the United States Constitution, Article I of the New Jersey State Constitution, as well as claims for the torts of negligence and outrage. For the reasons set forth below, Defendants' motion will be denied.

**I.     BACKGROUND**

     On September 10, 2002, the city council of Atlantic City, New Jersey ("City Council") passed Resolution 583 creating the position of Jobs Coordinator and awarding a one-year, no-bid contract to Plaintiff to serve in that position. (Defs.' Mot. Summ. J. Ex. D.) Plaintiff acted as

1

Jobs Coordinator from October 1, 2002 to September 30, 2003. (Defs.' Mot. Summ. J. Ex. B.) The position was funded through a Community Development Block Grant, which in turn was funded by a five-year subsidization plan with the Department of Housing and Urban Development. (Defs.' Mot. Summ. J. Exs. B, G.) The contract specified that Plaintiff would be paid $40,000 for the year on full and satisfactory completion of the Community Development Block Grant Agreement. (Defs.' Mot. Summ. J. Ex. B.)

On September 3, 2003, City Council discussed whether to renew the Jobs Coordinator contract for a second year. City Council members considered Plaintiff's performance and whether public funds should continue to be allocated for the position. (Defs.' Mot. Summ. J. Ex. L.) Despite some dispute concerning the procedural propriety of voting on the contract without the mayor's agreement to present it for a vote, City Council ultimately voted not to renew Plaintiff's contract, thereby ending the grant funding for the Jobs Coordinator position. (Defs.' Mot. for Summ. J. Ex. K.)

Plaintiff alleges that the vote on Resolution 686 chilled his right to freedom of speech and constituted retaliation against Plaintiff for exercising his First Amendment rights. (Compl. ¶ 59.) Specifically, Plaintiff contends that defendant Callaway retaliated against him for remaining loyal to a former political ally of Callaway's, testifying against Callaway in a municipal criminal trial, and volunteering for the campaign of Callaway's opponent in the 2002 city council race. (Compl. ¶¶ 14-34.)

On September 2, 2005, Plaintiff filed a complaint against Callaway and Atlantic City, alleging that the actions taken by City Council violated his rights under the First Amendment of the United States Constitution and Article I of the New Jersey Constitution and constituted the

2

torts of negligence and outrage. (Pl. Compl. ¶ 5.) Defendant Callaway filed a motion for summary judgment on May 2, 2007, arguing that the actions giving rise to Plaintiff's claims were legislative in nature, and thus he was entitled to legislative immunity. As an alternative to his summary judgment motion, Callaway asks the Court to issue an order barring Plaintiff's lost wage damages, claiming the Jobs Coordinator contract violated state law and was void as a result. Defendant Atlantic City joined Callaway's motion and additionally argued it was entitled to summary judgment on Plaintiff's tort claims based on the New Jersey Tort Claims Act. Plaintiff opposes Defendants' motion, and Defendants both filed reply briefs.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.   DISCUSSION

#### A.   § 1983 Claims Against Craig Callaway

Defendant Callaway is not entitled to legislative immunity for the vote on Resolution 686.  Under 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  The term "persons" includes local officers acting under color of state law.  Carver v. Foerster, 102 F.3d 96, 99 (3d Cir. 1996) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)).

Nevertheless, federal, state, and local legislators are entitled to absolute immunity from liability under 42 U.S.C. § 1983 for their legislative activities.  Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998).  At the municipal level, absolute legislative immunity attaches to actions that are both (1) substantively legislative, involving "policy-making of a general purpose" or "line-drawing"; and (2) procedurally legislative, meaning that they are "passed by means of established legislative procedures."  Carver, 102 F.3d at 100.  This inquiry must be made

"stripped of all considerations of intent and motive on the part of the defendants." Baraka v. McGreevy, 481 F.3d 187, 200 (3d Cir. 2007) (quoting Bogan, 523 U.S. at 54)).

In determining whether an act is substantively legislative, the Third Circuit has looked to the number of affected individuals as a guide. E.g., Fowler-Nash v. Democratic Caucus of the Pa. House of Representatives, 469 F.3d 328 (3d Cir. 2006); Ryan v. Burlington County, N.J., 889 F.2d 1286 (3d Cir. 1989); Gallas v. Sup. Ct. of Pa., 211 F.3d 760 (3d Cir. 2000). While not dispositive, decisions that impact only a single or small number of individuals tend to be administrative, whereas those that affect a larger number of people or the community as a whole are likely legislative. See Ryan, 889 F.2d at 1290-91 (holding that decisions by county board of freeholders regarding jail staff and inmates were not substantively legislative because decisions did not affect community as a whole and legislative line-drawing was not implicated); Gallas, 211 F.3d at 774 n.14 (stating that a legislative body passing a de jure law affecting only one person might still be entitled to legislative immunity).

To satisfy the procedural prong, "constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve." Ryan, 889 F.2d at 1291. The court in Ryan continued, "When the decision of a governing body has impact on the community as a whole, the proper procedures for legislating must be followed or that governing body . . . risks running afoul of constitutionally mandated due process rights." Id. "Since municipal corporations have been delegated legislative authority only within strictly defined statutory limits, they can only act legislatively when following the statutory procedures specified for such action." Abraham v. Pekarski, 728 F.2d 167, 175 (3d Cir. 1984).

In Bogan, the Supreme Court held that city officials were immune from liability under § 1983 for voting to eliminate the city's Department of Health and Human Services ("DHHS") of which the plaintiff was the sole employee. Id. at 47.  There, the plaintiff had alleged that the decision was racially motivated and made in retaliation for the plaintiff exercising her First Amendment rights. Id.  The decision-making process in Bogan included the mayor's proposal to cut DHHS as part of his proposed budget, the city council ordinance committee's approval of an ordinance terminating DHHS, a vote by the full city council to approve the ordinance, and the mayor signing the ordinance into law. Id.  In assessing whether such actions were legislative, the Court did not consider the defendants' alleged motives but looked strictly at the nature of these acts, deeming them "quintessentially legislative" in procedure. Id.  The Court did not find the need to delve into the substance of the actions since, procedurally, the ordinance "bore all the hallmarks of traditional legislation." Id.

While the vote by defendant Callaway and the other members of City Council to eliminate Plaintiff's position was legislative in substance, their failure to adhere to mandatory legislative procedures in carrying out the vote means it was not an immunized legislative act. The decision whether to continue to allocate taxpayer funds to the Jobs Coordinator position was substantively legislative because it affected the community at large and involved discretion and policymaking. See Bogan, 525 U.S. at 56.  Nevertheless, Defendants have failed to show that City Council's actions were also procedurally legislative. Atlantic City is organized under the Faulkner Act's mayor-council plan. N.J. Stat. Ann.§ 40:69A-32(a); Thompson v. City of Atl. City, 190 N.J. 359, 373 (N.J. 2007).  As such, City Council is responsible for the legislative functions of local government. Mun. Council for the City of Newark v. James, 873 A.2d 544,

6

546-48 (N.J. 2005). Under section 40:69A-36, the legislative powers of the council "shall be exercised by ordinance, except for the exercise of those powers that, under this plan of government or general law, do not require action by the mayor as a condition of approval for the exercise thereof, and may, therefore, be exercised by resolution." Stated otherwise, state law authorizes municipal legislative bodies to act by resolution for matters that do not require the mayor's approval. With regard to contracts, however, New Jersey law specifically authorizes municipalities to utilize the resolution process for "[a]pproval contracts presented by the mayor." § 40:69A-36(*l*) (emphasis added). The exclusive authority of a municipal legislative body with respect to contracts is to vote on them once they are presented by the mayor. James, 873 A.2d at 550.

    The record before the Court demonstrates that City Council did not follow the statutory procedures specified for the resolution process. The transcript from the meeting during which the vote on Resolution 686 occurred shows that even at the time of the vote, council members were aware that they were deviating from established procedure.

> City Clerk Adams: Resolution 686 – agreement with –
> Atlantic City Solicitor Steven Smoger: If I may, the Administration requests this be pulled at this time.
> Councilman Timothy Mancuso: Pulled by the Administration.
> President Craig Callaway: No, you don't – we do not want to pull this. We'll deal with it tonight.
> City Clerk Adams: It's not being pulled.
> Business Administrator Fitzgerald: Well, the sponsor is withdrawing it.
> Atlantic City Solicitor Steven Smoger: Respectfully, that's within the purview of the Faulkner Act and the Mayor can withdraw it before it comes before you.

>President Craig Callaway: And, any member of Council can bring it up. It's on the agenda and we can bring it up and that's what we're going to do.
>
>Atlantic City Solicitor Steven Smoger: Again, under the authority of the Mayor, this is a contract proposal which is exclusively in the purview of the Mayor to present and he respectfully wishes that it be withdrawn at this time.
>
>Mr. Fauntleroy: Well, the Solicitor is correct that Council cannot pass a resolution making the Administration enter into a contract if it is not willing to do so . . . . That's a matter of the Executive Branch to negotiate any contracts.
>
>Councilperson Gene Robinson: Point of clarification, but, if it were to remain, we could vote it up or down.
>
>Mr. Fauntleroy: But, if you voted it, if you passed this resolution, you're, in a sense, saying that the Administration has to enter into this contract, which you cannot force the administration to do.
>
>Councilperson Gene Robinson: Okay.
>
>President Craig Callaway: Well, I'm sponsoring it.
>
>Vice-President Dennis Mason: Second it. Just move it.
>
>President Craig Callaway: Discussion?
>
>Councilperson Gene Robinson: Wait, I thought –
>
>City Clerk Adams: Who seconded it?
>
>President Craig Callaway: No we are not. We don't have the authority to make them – it's not binding if we voted it up – the Administration is not bound by this resolution.
>
>Councilperson Ramon Rosario: We know that because that happened before. Remember, and we voted it up. But anyway we voted it up.

(Defs.' Mot. Summ. J. Ex. L at 137-140.) This excerpt shows that there was discussion during the meeting about whether a vote by City Council on Resolution 686 complied with City Council's legislative authority as created by the Faulkner Act. Defendant Callaway even appears to have conceded that because the mayor declined to present the contract for a vote, the vote was

a deviation from established legislative procedures.

While the record before the Court does not reveal how the September 3 vote on Resolution 686 ultimately resulted in Plaintiff's contract not being renewed, that fact does not matter for purposes of disposing of Defendants' summary judgment motion. Defendants appear to argue that a second vote on October 8, 2003 also constituted a legislative decision not to renew Plaintiff's contract; however, Plaintiff's complaint alleges that his damages resulted from the September 3, 2003 vote. Consequently, it is the conduct of Defendants on that date this Court must consider.

The evidence shows that on September 3, City Council voted on a contract purportedly using the resolution process, but it did not adhere to the procedures specified for resolutions concerning contracts. As stated in Abraham, municipal corporations have legislative authority only within strictly defined statutory limits, and to garner legislative immunity, legislators must adhere to the statutory procedures established for legislative actions. Accordingly, defendant Callaway is not entitled to legislative immunity for his vote on Resolution 686, and Defendants' motion for summary judgment on that basis will be denied.

B.      Atlantic City's Tort Liability

Atlantic City is not immune from liability on Plaintiff's claims for negligence and outrage pursuant to the New Jersey Tort Claims Act. That law exempts public entities from liability for discretionary activities. N.J. Stat. Ann. § 59:2-3. Subsection (a) of this section immunizes public entities from "[injuries] resulting from the exercise of judgment or discretion vested in the entity." § 59:2-3(a). In particular, public entities are entitled to absolute immunity for "legislative or judicial action or inaction, or administrative action or inaction of a legislative or

judicial nature." § 59:2-3(b) & comment.  Subsection (c) delineates the type of high-level policy decisions that are to remain free from the threat of tort liability, including allocation of funds to purchase equipment, construction and maintenance of facilities, and hiring personnel.  § 59:2-3(c) & comment.  The Act also includes a provision stating that "a public employee is not liable if he acts in good faith in the execution or enforcement of any law." § 59:3-3.

To qualify for immunity under section 59:2-3, the asserted discretionary decisions must be "actual, high-level policymaking decisions" or "basic policy determinations."  Costa v. Josey, 415 A.2d 337, 340 (N.J. 1980).  A discretionary act has been described as one involving planning.  It is distinct from a ministerial act, which is one that "a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done."  Strauss v. Twp. of Holmdel, 711 A.2d 1385, 1393 (N.J. Super. Ct. Law Div. 1997) (citing Morey v. Palmer, 556 A.2d 811, 815 (N.J. Super. Ct. App. Div. 1989)).

To merit immunity under section 59:3-3, the action giving rise to the plaintiff's claims must have been carried out in good faith.  New Jersey courts have defined "good faith," in this context to mean objectively reasonable conduct.  Hayes v. Mercer County, 526 A.2d 737, 741 (N.J. Super. Ct. App. Div.), certif. denied, 532 A.2d 226 (1987).  The test is whether a public employee reasonably believed that his or her actions were lawful in light of clearly established laws.  Delbridge v. Schaeffer, 569 A.2d 872, 883 (N.J. Super. Ct. Law Div. 1989), aff'd sub nom. A.D. v. Franco, 687 A.2d 748 (N.J. Super. Ct. App. Div. 1993), certif. denied, 640 A.2d 849 (1994), cert. denied sub nom. Delbridge v. Franco, 513 U.S. 832 (1994).

Additionally, in Lascurain v. City of Newark, 793 A.2d 731 (N.J. Super. Ct. App. Div.

2002), the court affirmed a grant of summary judgment on the plaintiff's claim for emotional distress against the city stemming from the city council's vote to approve a lease of a piece of city-owned property.  Id. at 736.  The court reasoned that because the vote implicated the council's discretionary judgment and the members acted in good faith in approving the lease, the defendants were entitled to immunity.  Id. at 753 (citing Strauss, 711 A.2d at 1393).

     Atlantic City is not entitled to immunity on Plaintiff's tort claims primarily because the injuries of which Plaintiff complains did not result from the exercise of discretion vested in City Council.  See N.J.S.A. § 59:2-3(a).  Since City Council's sole authority with regard to contracts is to vote on them once they are presented by the mayor, City Council was not vested with the authority to engage in the discretionary act of voting on Resolution 686.  Moreover, the record raises grave doubts as to whether city council members acted in good faith when they decided to deviate from the procedures for the resolution process.  The transcript reveals that during the meeting, the city solicitor informed City Council that by proceeding with a vote on Resolution 686, they would be acting in contravention of the Faulkner Act.  Nevertheless, City Council decided to vote.  This evidence demonstrates that City Council members did not reasonably believe their actions were lawful in light of clearly established laws.  See Delbridge, 569 A.2d at 883.  Consequently, Atlantic City cannot find refuge under the New Jersey Tort Claims Act, and Plaintiff's tort claims against it survive.

     C.  <u>Plaintiff's Lost Wage Damages</u>

     This Court declines to bar Plaintiff's claim for damages in the form of lost wages.  In support of their motion to limit damages, Defendants argue that City Council's vote to award Plaintiff the contract in 2002 violated New Jersey's public bidding laws and that Plaintiff was not

qualified for the Jobs Coordinator position in the first place.  The Court will not eliminate lost wages damages at this juncture, however, because Plaintiff does not seek to recover based on the contract.  Plaintiffs' claims arise under 42 U.S.C. § 1983, and thus if liability were proven at trial, the question would be what damages Plaintiff suffered from Defendants' violation of his civil rights.  Moreover, this Court cannot determine as a matter of law whether Plaintiff was qualified for the position or not.  Plaintiff has adduced a large volume of evidence supporting his qualifications, and the question remains one for the ultimate finder of fact.  As a result, Defendants' motion to limit damages will be denied.

### IV.   CONCLUSION

Based on the foregoing reasoning, the Court will deny Defendants' motion for summary judgment.  An accompanying Order shall issue today.


Dated: 11/21/07               　　　　　　　　　　 s/ Robert B. Kugler
　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge